739 F.Supp. 546 (1990)
UNITED STATES of America, Plaintiff,
v.
Michael S. WASHINGTON, Defendant.
Crim. No. 90-18-FR.
United States District Court, D. Oregon.
June 14, 1990.
*547 *548 Charles H. Turner, U.S. Atty., Michael W. Mosman, Asst. U.S. Atty., Portland, Or., for plaintiff.
Steven T. Wax, Federal Defender, Stephen R. Sady, Asst. Federal Defender, Portland, Or., for defendant.

OPINION
FRYE, District Judge:
The matters before the court are the motions of defendant, Michael S. Washington, to suppress physical evidence and statements. The indictment alleges that on May 3, 1989, Washington was a felon in possession of a firearm in violation of 18 U.S.C. § 922(n).

FACTS
On the evening of May 3, 1989, Allen Cardwell and Becky Wooten, police officers of the City of Portland, were on patrol. Officer Cardwell observed Washington commit the traffic violation of failure to signal a turn.[1] Officer Cardwell turned the patrol car around in order to pursue Washington's vehicle.
By the time the police officers located Washington's vehicle, it was stopped in the parking lot of the Sentry Market located at the corner of Northeast 33rd and Killingsworth Streets. Washington's fiancee, Barbara Hinton, who worked in a restaurant nearby, was seated in the car with Washington. Officer Cardwell approached Washington and asked for identification. Washington told Officer Cardwell that he did not have his operator's license. Officer Cardwell asked Washington to step out of the vehicle and placed him under arrest for failure to display an operator's license.
Washington was patted down for weapons, handcuffed, and placed in the back of the patrol car. Washington told Officer Cardwell his name and date of birth, and Officer Cardwell confirmed this information over the police radio. Other officers who had arrived at the scene also confirmed Washington's identity. During this time, the passenger area of Washington's vehicle was checked for weapons. A knife was found in the glove compartment, but no other weapons were found in the passenger area.
After the search of the passenger area, Officer Cardwell asked Washington for consent to open the trunk of Washington's vehicle in order to look for weapons. Washington consented, stating that there were no weapons in the trunk. Washington identified one of his keys as the trunk key, but neither that key nor any other key on the key chain would open the trunk. The officers removed the handcuffs from Washington so that he could try to unlock the trunk, but he was also unable to open the trunk. By this time, a tow truck had arrived. Washington was then asked if he would allow the driver of the tow truck to open the trunk although that would cause some minor damage. Washington refused, stating that he did not want any damage done to the car.
A number of people had gathered nearby, including relatives and friends of Washington. Washington was able to communicate with some of these people, including his mother and his teenage son. Some of the members of the crowd appeared to be hostile to the police officers. They decided to move Washington and his vehicle to a location a few blocks away where it would be easier to maintain order while completing the search of the trunk.
After arriving at the second location, Officer Wooten asked the tow truck driver if there was a way to get into the trunk of Washington's vehicle without damaging the car. The tow truck driver replied that the back seats could be removed and replaced with no damage to the vehicle. Washington was not consulted regarding the removal of the back seats. The seats were taken out, and Officer Wooten looked into the trunk through a hole in the body of *549 the vehicle. Officer Wooten saw the barrel of a gun in the trunk. Nothing in the trunk was touched, and the seat was placed back into position.
At some time after the move to the second location, Sergeant Kanzler arrived and advised Washington of his Miranda rights. To this point, Washington had been cooperative and calm. However, when Sergeant Kanzler informed Washington that they knew there was a weapon in the trunk and asked for Washington's consent to pop the trunk and seize the gun, Washington's demeanor changed dramatically. He denied that there was a gun in the car and also denied that he had ever given the officers permission to search his car. Officer Wooten subsequently obtained a search warrant and retrieved a .357 Magnum revolver from the trunk of Washington's vehicle.
On June 13, 1989, Special Agent Larry Craig of the Bureau of Alcohol, Tobacco and Firearms and Trooper Griffith Holland of the Oregon State Police went to the residence of Washington.[2] Both of the officers identified themselves, and Special Agent Craig stated that the purpose of the interview was to speak with Washington regarding federal charges involving the gun that was found on May 3, 1989. During the interview, Washington made incriminating statements regarding his possession of the revolver found in the trunk.

ANALYSIS AND RULING

1. Motion to Suppress Physical Evidence

Washington moves to suppress the weapon that was seized on May 3, 1989, and any evidence which is the fruit of the search and seizure on that date. Washington contends that 1) the traffic stop of his vehicle was merely a pretext to search the vehicle for weapons; 2) the officers had no right to detain him for failure to display a valid operator's license any longer than the time needed to confirm his identity; 3) he did not freely and voluntarily consent to the search of the trunk; and 4) the officers exceeded the scope of any consent which he gave.
Officer Cardwell decided to stop Washington for a traffic violation before he became aware that Washington's vehicle had been mentioned at roll call. Washington then failed to present a valid drivers' license, a Class C misdemeanor under the laws of the State of Oregon. Whether an arrest is a mere pretext to search turns on the motivation or primary purpose of the arresting officers. United States v. Smith, 802 F.2d 1119, 1124 (9th Cir.1986). The court finds that the primary purpose of Officer Cardwell in stopping and arresting Washington was because he committed a traffic violation, and that the stop was not a pretext to search the vehicle for weapons.
Under O.R.S. 807.570, "[a] police officer may detain a person arrested or cited for the offense described in this section [failure to present a license] only for such time as reasonably necessary to investigate and verify the person's identity." Officer Cardwell testified that he was satisfied as to Washington's identity before he asked Washington for permission to search the trunk of Washington's vehicle. The government presented no evidence of any reason for continuing to detain Washington or his vehicle after that point, other than the officers' desire to search the trunk.
The search of the passenger area of the vehicle was justified as a search incident to arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). However, the search of the passenger area was completed before Officer Cardwell asked for permission to open the trunk. The search of the trunk cannot be characterized as part of the search incident to arrest. The fourth amendment does not prevent police officers from asking questions if an individual is willing to answer, or from making a search if the individual gives consent. United States v. Espinosa, 827 F.2d 604, 608 (9th Cir.1987). Thus, Washington's continued detention was justified *550 if he voluntarily consented to the search of the trunk.
The government bears the burden of proving that under the totality of the circumstances a consent was voluntary and not the product of duress or coercion. Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S.Ct. 2041, 2098, 36 L.Ed.2d 854 (1973). Washington was handcuffed and placed in a patrol car before he gave his initial consent to open the trunk. At the time of his consent, Washington had not yet been given Miranda warnings. There were several police officers present. However, Washington appeared calm and cooperative at this time, identifying the trunk key for the officers, and attempting to help the officers open the trunk with the key. Furthermore, members of Washington's family and friends were present at the scene, and Washington was able to speak with some of them. Washington's mother testified at the hearing that he told her there was nothing going on, and that she could go home.
After considering all of these facts, the court finds that Washington freely and voluntarily consented to the request of Officer Cardwell to open the trunk of his automobile. Despite the fact that Washington was in custody, there is no evidence that he was intimidated or coerced into giving consent. Indeed, a short while later, when Washington was asked whether the officers could open the trunk in a manner that would cause damage to the vehicle, Washington refused his consent. Thus, this case is distinguishable from cases such as United States v. Al-Azzawy, 784 F.2d 890, 895 (9th Cir.1985), where the circumstances surrounding the consent strongly supported a finding of intimidation or coercion.
It is more problematic whether Washington's consent to search the trunk extended to the removal of the car seats in order to get access to the trunk. The government argues that the only limitation that Washington made on the search was that no damage be done to the car, and that Washington consented to the continuing efforts to open the trunk by trying to open it himself. Washington argues, however, that any consent was limited to opening the trunk with a key, and that the removal of the car seats was beyond the scope of his consent.
The government has the burden to show not only that the defendant consented to a search, but that the search was within the scope of the consent given. The existence of consent to a search is not lightly to be inferred. United States v. Patacchia, 602 F.2d 218, 219 (9th Cir.1979). In Patacchia, the defendant was stopped at a border checkpoint and asked if he would open the trunk of his car. Patacchia was obliging, but stated that the electric trunk release was inoperative, and that body damage made it impossible to open the trunk. Patacchia tried the electric release to demonstrate that the trunk could not be opened. Patacchia then became impatient and requested to be allowed to leave, but the agents placed Patacchia in a patrol car and pried the trunk open far enough to detect that there was marijuana in the trunk. The Ninth Circuit found that any consent given by Patacchia was qualified, and that he did not give consent to open the trunk "if you can." Id.
The evidence in this case indicates that Washington's consent was similarly limited. The testimony showed that Washington consented when Officer Cardwell asked if he could "open the trunk;" that Washington cooperated in efforts to open the trunk with a key; that Washington denied permission to open the trunk in a manner that could cause damage to the vehicle; and that Washington was not asked for his consent to the removal of the car seats. Moreover, despite the fact that his identity had been confirmed and his further detention was based solely upon his consent, Washington was not asked to consent to the move to the second location, but was transported to the second location in handcuffs and in the back of a patrol car.
The court finds that the removal of the seats went beyond the scope of the consent given by Washington to open the trunk. Even if the seats were replaced without damage to the car, the court finds that consent to such an unusual measure cannot *551 be inferred from the evidence. In addition, the court finds that Washington was detained beyond the time allowed by O.R.S. 807.570, and that he did not consent to a prolonged detention or to the move to the second location.
Accordingly, Washington's motion to suppress evidence found in the trunk of his vehicle is granted.

2. Motion to Suppress Statements

Washington moves to suppress statements made by him to law enforcement personnel on June 13, 1989. The court finds that Washington's statements were elicited as a result of the unlawful search of the trunk on May 3, 1989. Accordingly, the statements made on June 13, 1989 must be suppressed as the "fruits" of the unlawful action. Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963).
Washington's motion to suppress statements made on June 13, 1989 is granted. In light of this result, the court does not reach the issues of whether Washington's rights under the fifth or sixth amendments were violated during the interview on June 13, 1989.

CONCLUSION
Washington's motions to suppress evidence and to suppress statements are granted.
NOTES
[1] While Officer Wooten became aware that the license plate on Washington's vehicle had been described at a recent roll call as the license plate of a vehicle which was connected with semi-automatic weapons, Officer Cardwell made the traffic stop based on Washington's failure to signal a turn.
[2] At this time, the only charge that had resulted from the events of May 3, 1989 was the charge of failure to display an operator's license.