OPINION
Defendant-appellant, Mark A. Holsinger, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of conspiracy to commit aggravated murder in violation of R.C. 2923.01.
In November 1998, Detective David Hunt of the Franklin County Sheriff's Office was contacted by a confidential informant who indicated that appellant was looking for a "hit-man" to kill Jerry Hutchinson, the husband of a woman with whom appellant was having an affair. As a result of this information, arrangements were made for Detective Hunt to pose as a "hit-man" and meet defendant.
On November 19, 1998, Detective Hunt met with defendant. Appellant told Detective Hunt that he wanted to have Hutchinson killed, and provided Hunt with Hutchinson's description, work location and automobile license plate number. Appellant agreed to pay Detective Hunt $5,000 for killing Hutchinson.
On November 24, 1998, Detective Hunt and appellant met a second time. At this meeting, appellant reaffirmed his desire to have Hutchinson killed, and made a $1,000 down payment on the killing. Appellant was to pay the remaining $4,000 after Hutchinson had been killed.
Based on the information gathered by Detective Hunt during his two meetings with defendant, the sheriff's office obtained a warrant for defendant's arrest. Thereafter, plain-clothes deputies in an unmarked car followed appellant as he drove to his place of employment. When appellant arrived at his workplace, the deputies waited while appellant parked and exited his automobile. The deputies then arrested appellant as he was walking across the parking lot. Immediately following appellant's arrest, and before appellant had been read the Miranda warnings, the deputies seized $4,000 cash from defendant's vehicle.
On December 4, 1998, appellant was indicted on one count of conspiracy to commit aggravated murder. On September 22, 1999, appellant moved to suppress all evidence seized from his automobile on the grounds that the search of the automobile following his arrest violated hisFourth Amendment right to be free from unreasonable searches and seizures. A hearing on appellant's motion to suppress was held on October 6, 1999. On October 13, 1999, the trial court denied appellant's motion to suppress. On November 1, 1999, appellant entered a no contest plea to one count of conspiracy to commit aggravated murder, and the trial court found him guilty.
Following a sentencing hearing on January 26, 2000, the trial court sentenced appellant to ten years in prison, the maximum allowable sentence for his crime.
Appellant appeals from his judgment of conviction and sentence assigning the following errors:
APPELLANT'S FIRST ASSIGNMENT OF ERROR:
 [THE] TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
APPELLANT'S SECOND ASSIGNMENT OF ERROR:
 [THE] TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION IN SENTENCING DEFENDANT-APPELLANT TO THE MAXIMUM TERM OF IMPRISONMENT.
Appellant's first assignment of error challenges the trial court's denial of his motion to suppress the evidence seized from his vehicle. In particular, appellant argues that the trial court should have suppressed the $4000 which the deputies seized from inside his vehicle immediately after his arrest.
The trial court denied appellant's motion to suppress finding that the search of appellant's vehicle was a lawful inventory search of the vehicle in preparation for its impoundment. Because we hold that appellant voluntarily consented to at least a limited search of his vehicle for the $4000, and the subsequent seizure of that money, we need not address the trial court's rationale.
The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures. A search or seizure conducted without a warrant issued upon a finding of probable cause is,per se, unreasonable subject to a few well established exceptions. Katzv. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514. A search or seizure conducted pursuant to valid consent is one of the well established exceptions to the Fourth Amendment's warrant requirement.Davis v. United States (1946), 328 U.S. 582, 593-594, 66 S.Ct. 1256,1261-1262.
The validity of a consent authorizing a search or seizure does not depend on whether the consenter was apprised of his Fourth Amendment rights prior to giving consent. Schneckloth v. Bustamonte (1973),412 U.S. 218, 231-248, 93 S.Ct. 2041, 2049-2058. Rather, the validity of such a consent depends on whether the consent was voluntarily given or was the product of duress or coercion. Id. at 227, 93 S.Ct. at 2048. The question of whether a consent was voluntarily given is a question of fact to be determined from the totality of the circumstances. Id. No single criterion is controlling, but all factors surrounding a consent must be taken into consideration in determining whether it was voluntarily given. Id. at 226, 93 S.Ct. at 2047.
The government always bears the burden of proof to establish the existence of effective consent. See Florida v. Royer (1983), 460 U.S. 491,497, 103 S.Ct. 1319, 1324. This burden is even heavier where voluntary consent was not explicitly given, but the government argues that voluntary consent should be implied from the consenter's conduct. UnitedStates v. Patacchia (C.A.9, 1979), 602 F.2d 218, 219. Although the burden of establishing it is heavy, voluntary consent will, on occasion, be implied from a defendant's conduct. See United States v. Mejia (C.A.9, 1992), 953 F.2d 461, 466 (consenter allowed officers to follow her into the bedroom without objecting); United States v. Griffin (C.A.7, 1976),530 F.2d 739 (consenter answered the door and stepped back, leaving the door open and leading officers into apartment); United Statesv. Katz (S.D.N.Y. 1965), 238 F. Supp. 689, 695 (consenter assisted in the search).
In the present case, Deputy Brian Fronius, one of the two deputies who arrested appellant, testified as follows regarding the seizure of the $4000 from appellant's vehicle:
 Q. When you arrested [appellant], did you ask him any questions about any property in the vehicle?
 A. After arrest, he was advised that we were going to seize his vehicle and impound it. And we asked him if there was anything of value that he would like to declare.
Q. Why did you ask him that?
 A. Just officer's safety protection, to prevent any false allegations of thefts.
 Q. Did [appellant] tell you anything about something of value that was in the vehicle?
A. He said that there was cash in the vehicle.
Q. Did you find cash in the vehicle?
 A. Yes. We asked him where it was so that we could locate that immediately and count it in front of him, and he directed us to the center console in the front of the truck, between the driver and passenger seat.
Q. How much money did you find in the center console?
A. I believe it was $4,000. [Tr. 6-7.]
Deputy Fronius's testimony establishes that appellant impliedly consented to at least a limited search of his vehicle for the purpose of locating the $4,000 contained therein. Not only did appellant admit that the money was in his vehicle, but he then aided the deputies in locating the money. Both of these actions were taken by appellant without protest and without any coercion by the arresting deputies. To be sure, Deputy Fronius did tell appellant that his vehicle was going to be impounded, and did ask appellant whether there was anything in the vehicle which he wished to declare. Significantly, however, Deputy Fronius did not tell appellant that his vehicle was going to be searched. While some limited coercion is inherently present in most police-citizen encounters, consent induced by this type of coercion is not constitutionally impermissible.State of Oregon v. Larson (Ore. 1996), 917 P.2d 519, 527.
Appellant's first assignment of error is overruled.
Appellant's second assignment of error challenges the trial court's imposition of the maximum prison sentence.
An appellate court may vacate or modify a sentence imposed by a trial court when it finds by clear and convincing evidence that the record does not support the sentence or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(1)(a) and (d).
R.C. 2929.14(C) provides, in relevant part:
 * * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
In sentencing appellant to the maximum allowable prison sentence in the present case, the trial court found both that appellant's crime was one of the "the worst forms of the offense" and that appellant poses a "likelihood of committing future crimes."
R.C. 2929.12(B) sets forth nine factors which, if applicable, tend to indicate that the crime committed by a defendant is one of the worst forms of that offense. Similarly, R.C. 2929.12(D) sets forth a list of five factors which, if applicable, tend to indicate that a defendant is likely to commit future crimes. Specifically, R.C. 2929.12(B) and (D) provide:
 (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 (9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.
* * *
 (D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28
or any other provision of the Revised Code for an earlier offense.
 (2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense.
The trial court determined that the second, sixth, and seventh factors listed in R.C. 2929.12(B) applied to defendant's case. Accordingly, the trial court considered these three factors to indicate that appellant's crime was one of the worst crimes of its kind. Similarly, the trial court found that the fifth factor set forth in R.C. 2929.12(D) applied to defendant's case, and considered this factor to indicate that appellant posses a tendency toward recidivism.
In challenging his sentence, appellant first argues that he should not have received the maximum sentence, as the trial court determined that only three of the factors listed in R.C. 2929.12(B), and only one of the factors listed in R.C. 2929.12(D) apply to his case. In essence, defendant contends that R.C. 2929.12(B) and (D) establish a balancing test whereby the factors in R.C. 2929.12(B) and (D) which apply to his case are to be weighed against the factors in these two provisions which do not apply to his case. Appellant misreads R.C. 2929.12.
Nothing in R.C. 2929.12 suggests, as appellant contends, that a sentencing court is to balance the applicable and inapplicable factors within a subsection. Rather, R.C. 2929.12 calls for the balancing of applicable criteria between related, but contrary subsections. As noted, R.C. 2929.12(B) and (D) set forth lists of factors which, if applicable, tend to indicate, respectively, that a defendant's crime is more serious than most crimes of its kind, and that a defendant is likely to commit future crimes. In contrast, R.C. 2929.12(C) and 2929.12(E) set forth lists of factors which, if applicable, tend to indicate, respectively, that a defendant's crime is less serious than most crimes of its kind, and that a defendant is not likely to commit future crimes. Accordingly, to the extent that a sentencing court finds factors in both R.C. 2929.12(B) and (C), or in both R.C. 2929.12(D) and (E) applicable in a given case, the court must balance the competing factors. However, a sentencing court is to assign no weight to any R.C. 2929.12 factors which it determines to be inapplicable in a given case.
Appellant also challenges his sentence on the grounds that the trial court erred in determining that the factors set forth in R.C. 2929.12(B)(6) and (7) apply to his case. R.C. 2929.12(B)(6) provides that "[t]he offender's relationship with the victim facilitated the offense." The trial court, in finding that appellant's relationship with the victim facilitated appellant's offense, relied upon a statement in the presentence investigation indicating that appellant and the victim had been co-workers. Appellant argues that this fact is insufficient to support a finding of a relationship. We disagree. R.C. 2929.12(B)(6) does not require a close relationship between the offender and the victim. Rather, any personal association between the offender and the victim is sufficient to satisfy this subsection.
However, we agree with appellant that the trial court erred in finding R.C. 2929.12(B)(7) to be applicable to his case. R.C. 2929.12(B)(7) provides that "[t]he offender committed the offense for hire or as a part of an organized criminal activity." There was no evidence presented at the sentencing hearing that appellant's crime was committed as part of an organized criminal activity. Nor was any evidence presented that appellant committed his offense "for hire." Instead, the evidence indicated that appellant was attempting to hire someone else to commit a crime.
Although the trial court erred in concluding that R.C. 2929.12(B)(7) applied to appellant's case, the error was harmless, as R.C. 2929.12(B)(2) and (6), provided ample support for the court's finding that appellant's crime was one of the worst of its kind.
Finally, defendant argues that the trial court's conclusion that R.C.2929.12(D)(5) applies to his case is against the weight of the evidence. R.C. 2929.12(D)(5) provides that "[t]he offender shows no genuine remorse for the offense." Appellant contends that he indicated that he was genuinely remorseful for his conduct at the sentencing hearing. The trial court, however, did not believe that appellant was genuinely remorseful for his actions, stating in this regard: "The court questions * * * whether the remorse that is indicated here today is remorse for causing problems to the [victim's] family or whether it's remorse at being caught and consequently incarcerated." The trial court was in the best position to judge appellant's demeanor and credibility with respect to his remorse, and we will not question its determination on the issue of whether appellant is genuinely remorseful for his actions.
Having reviewed the transcript of the sentencing hearing, the presentence investigation, and sentencing entry, we cannot find that there is clear and convincing evidence that the record does not support the sentence imposed, or that appellant's sentence is otherwise contrary to law.
Appellant's second assignment of error is overruled.
Accordingly, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ___________________ LAZARUS, J.
BOWMAN, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.