PER CURIAM.
The appellant, Ragon King, pleaded guilty to the unlawful possession of a controlled substance, methamphetamine, a violation of § 13A-12-212, Ala.Code 1975, and was sentenced to six years in prison. Before pleading guilty King specifically reserved his right to appeal the circuit court’s ruling denying his motion to suppress.
At the suppression hearing, Sgt. Mike Parrish of the Chambers County Sheriffs Department testified that he received numerous complaints from Gabriel Wayne Hornsby’s neighbors about unusual activity at Hornsby’s house. The complaints were based on the heavy traffic to and from his residence and a pervasive chemical odor emanating from the residence. Sgt. Parrish and Deputy Terry Wood set up surveillance on the house and saw the heavy traffic. On one occasion they smelled the distinct odor of anhydrous ammonia — a chemical commonly used in the production of methamphetamine. Sgt. Parrish obtained a search warrant for the premises.
On May 12, 2006, Sgt. Parrish and Deputy Wood went to Hornsby’s house to execute the search warrant. While waiting for backup officers, Sgt. Parrish and Deputy Wood saw King and Elise Escalera leave the residence, enter a vehicle, and drive up to the mailbox in front of the house. As King started to drive away from the mailbox, Sgt. Parrish and Deputy Wood stopped the vehicle. Deputy Wood informed King of the purpose for the stop and asked him to get out of the vehicle. Deputy Wood advised King that he was going to conduct a patdown search for weapons. The patdown search initially revealed a pocketknife. Deputy Wood then felt an object that he could not identify. When Deputy Wood asked King what was in his pocket King responded that he had just put his pants on and did not know. King then gave Deputy Wood permission to retrieve the object. Deputy Wood retrieved a closed black film canister and opened it. The canister contained what Deputy Wood recognized as metham-phetamines and a pink tablet. Deputy Wood then arrested King.
“ ‘This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute.’ State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004). ‘A trial court’s ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal.’ State v. Hargett, 935 So.2d 1200, 1204 (Ala.Crim.App.2005).”
Marshall v. State, 992 So.2d 762, 767 (Ala.Crim.App.2007).
I.
King contends that the initial traffic stop and the subsequent search of his person were without probable cause and that they exceeded the scope of the search warrant. Specifically, King argues that police could not search him because he was not on the premises named in the search warrant nor was he specifically named in the search warrant.
The search warrant provided for a search of “[t]he premises known as the residence of Gabriel Wayne Hornsby ... located at 7255 County Road 114, Lafayette, Chambers County, Alabama. The search warrant is to include the premises described, the curtilage, any outbuildings and vehicles on the curtilage, the persons of Gabriel Wayne Hornsby....” (emphasis added). The property to be searched for and seized was listed specifi *33 cally as: “methamphetamine, clandestine laboratory equipment, drug paraphernalia, and U.S. Currency derived from the sale of such.”
“ ‘A search warrant authorizing a search of certain premises generally includes any vehicles located within its curti-lage if the objects of the search might be located therein.’ ” English v. State, 603 So.2d 1128, 1130 (Ala.Crim.App.1992), quoting United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir.1990). When Sgt. Parrish and Deputy Wood arrived to execute the search warrant, King’s vehicle was parked within the curtilage of Horns-by’s residence. Thus, the vehicle was within the scope of the search warrant. “A valid search warrant authorizing the search of vehicles on the subject property permits the search of vehicles arriving on that property during the course of the search, so long as those vehicles could reasonably contain items the officers are searching for.” United States v. Tamari, 454 F.3d 1259, 1263 (11th Cir.2006). The circuit court did not err when it denied King’s motion to suppress on these grounds.
II.
King next argues that the trial court erred in denying his motion to suppress because, he argues, the search of his person was outside the scope of the search warrant and was conducted without his consent. It is undisputed that King gave his consent for Deputy Wood to retrieve the object; however, King argues that Deputy Wood exceeded the scope of his consent when he opened the film canister.
“A consensual search is reasonable if the search is within the scope of the consent given. United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir.1992). The scope of a person’s consent is determined by whether it is objectively reasonable for the police to believe that the consent permitted them to search where they did. Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991). ...
“The scope of a search may be further defined during the course of the search by the passive acquiescence of the person whose property is being searched. See e.g., United States v. DeWitt, 946 F.2d 1497, 1501 (10th Cir.1991) (officer’s placement of his hand in cleft between back seat cushions of car did not exceed scope of consent, where defendant did not object until after discovery of narcotics), cert. denied, 502 U.S. 1118, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992); United States v. Alfaro, 935 F.2d 64, 67 (5th Cir.1991) (defendant fails to withdraw consent where he asks to go outside to talk to another but makes no protest). Cf. United States v. Patacchia, 602 F.2d 218, 219 (9th Cir.1979) (saying T would but I can’t’ open car trunk, is not consent where prior consent not given).”
Grinton v. Commonwealth, 14 Va.App. 846, 850-51, 419 S.E.2d 860, 862-63 (1992). “ ‘The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of “objective” reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?’” Bender v. State, 687 So.2d 219, 221 (Ala.Crim.App.1996), quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991).
At the suppression hearing Deputy Wood testified that he asked King for permission to retrieve the unidentified object from his pocket to determine what it was and that the appellant consented. During the suppression hearing, defense counsel argued that Deputy Wood had permission to retrieve the canister, but not to *34 investigate what it was. The following transpired at the suppression hearing:
“[DEFENSE COUNSEL]: You got the film canister out. It has got a top on it. You are holding it in your hand. What did you do with it?
“DEPUTY WOOD: I checked to see what was inside in case it was something that was going to harm me.
“[DEFENSE COUNSEL]: Did you ask him permission to open that up?
“DEPUTY WOOD: I asked for permission to retrieve it and find out what it was.
“[DEFENSE COUNSEL]: You said you asked him permission to — Well, you asked him. From what I remember, you said, ‘What else is in your pocket?’
“DEPUTY WOOD: Yes.
“[DEFENSE COUNSEL]: He said, T don’t know. I just put my pants on. I’m not sure what it is.’
“DEPUTY WOOD: Um-hum.
“[DEFENSE COUNSEL]: You said, ‘Do you mind if I retrieve it?’
“DEPUTY WOOD: Retrieve it and find out what it was.
“[DEFENSE COUNSEL]: So you want to retrieve it and find out what it is instead of just retrieve it?
“DEPUTY WOOD: I pulled it from his pocket to find out what it was.
“[DEFENSE COUNSEL]: Okay. Now, you asked him permission to take out the knife and he said yes?
“DEPUTY WOOD: Yes, um-hum.
“[DEFENSE COUNSEL]: You asked him permission to take the canister out of his pocket. He said, yes. Did you ask him for permission to open and see what was inside?
“DEPUTY WOOD: I felt that me trying to find out what it was included me being able to open it and make sure there was nothing inside of it.
“[DEFENSE COUNSEL]: So you didn’t feel like you needed to ask him to open it?
“DEPUTY WOOD: No, I didn’t.”
(R. 25-28.) There was no testimony indicating that King objected when Deputy Wood opened the film canister or that King revoked his consent at any time.
The circuit court, when denying the motion to suppress, stated that it was reasonable for Deputy Wood to believe that the consent to retrieve the canister also encompassed the consent to open it. We agree with the circuit court that a reasonable person would have understood that retrieving the object, the black film canister, and finding out what it was, would of necessity, include opening the canister. Therefore, we hold that Deputy Wood’s search did not exceed the scope of King’s consent, and the circuit court correctly denied King’s motion to suppress.
For these reasons, we affirm King’s conviction for the unlawful possession of a controlled substance.
AFFIRMED.
BASCHAB, P.J., and McMILLAN and WISE, JJ., concur. SHAW, J., concurs in the result. WELCH, J., dissents, with opinion.