DECISION AND JUDGMENT ENTRY
Gregory Baum appeals his conviction for drug abuse, a violation of R.C. 2925.11(C)(4)(a). He asserts that the Ross County Court of Common Pleas should not have allowed Officer Washburn to testify because he was incompetent pursuant to Evid.R. 601(C). We disagree because Washburn's main purpose during his shift was drug interdiction, not enforcement of traffic laws. Baum also asserts that the trial court should have granted his motion to suppress. We disagree because the officers had reasonable suspicion to continue detaining Baum after the initial searches yielded no drugs.
 I.
Officers Washburn and Goble of the Chillicothe Police Department were working drug interdiction when they spotted Baum walking in a known drug area. Washburn and Goble were working undercover in plain clothes and in an unmarked vehicle. They followed Baum as he got into his car and drove away. Washburn noticed that Baum turned right without using his turn signal, a violation of Chillicothe's Revised Ordinances. He radioed for a marked police cruiser to pull over Baum. Officer Buchanan responded and stopped Baum. Washburn approached Baum's car and asked him for his driver's license and registration. He then radioed for Officer Hartley, who is in charge of the department's drug detection dog, Angel. Washburn borrowed a traffic citation form from Buchanan because he did not carry any with him.
As Washburn was completing the traffic citation, Hartley arrived with Angel. Hartley walked Angel around Baum's car with Baum inside the car. Angel alerted to the driver's side door. The officers searched Baum's car but found no drugs. Washburn patted down Baum and also found no drugs. Goble suggested that Washburn check Baum's left front pocket. Washburn found an off-white rock in the pocket. He field-tested it for cocaine. The test was positive.
The officers arrested Baum for drug abuse and issued a citation for the signal violation. He pled not guilty and filed a motion to suppress the rock. Baum argued that, once the officers searched the car and patted him down without finding drugs, any further detention was illegal. At the suppression hearing, Baum objected to Washburn's testimony arguing that Washburn was incompetent to testify under Evid.R. 601(C). The trial court overruled his objection and allowed Washburn to testify. After the trial court denied his motion to suppress, Baum pled no contest. The trial court found him guilty and sentenced him accordingly.
Baum appeals and asserts the following assignment of error:
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.
 II.
Baum asserts that the trial court erred in denying his motion to suppress for two reasons: (1) the trial court should not have permitted Washburn's testimony about the traffic violation because he was incompetent to testify, and (2) the officers unconstitutionally detained him after they finished searching his car and patted him down without finding any drugs.
Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United States v.Martinez (C.A.11 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Carter (1995), 72 Ohio St.3d 545,552. A reviewing court should not disturb the trial court's findings on the issue of credibility. State v. Mills
(1992), 62 Ohio St.3d 357, 366. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592,594. An appellate court reviews the trial court's application of the law de novo. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 A.
Baum first argues that Washburn should not have been permitted to testify at the suppression hearing about Baum's traffic violation because Washburn was not in a properly marked vehicle or in a legally distinctive uniform when he observed the violation, and therefore he was incompetent under Evid.R. 601(C).
A law enforcement officer is not a competent witness to a traffic violation if the officer (1) is on duty exclusively or for the main purpose of enforcing traffic laws, (2) arrests or assists in the arrest of a misdemeanor offender, and (3) is not in a properly marked vehicle and legally distinctive uniform as prescribed by statute. Evid.R. 601(C); State v. Huth (1986),24 Ohio St.3d 114. The phrase "on duty for the exclusive or main purpose of" refers to the officer's main purpose for his or her whole period of duty, not to his or her duty during the apprehension and arrest of a particular suspect. Huth at the syllabus. Accordingly, if an officer's main purpose is something other than the enforcement of traffic laws, but the officer arrests a traffic offender anyway, the officer need not be in a properly marked vehicle and legally distinctive uniform to be competent to testify to the arrest. Huth; State v. Butler (1991),77 Ohio App.3d 143, 146.
At the time Washburn observed Baum violating a traffic law, his primary duty was drug interdiction, not traffic enforcement. Washburn testified at the hearing that he was working drug interdiction duty that evening. He needed to borrow a traffic citation form from Buchanan because he was not carrying any. His decision to pursue and arrest Baum did not change the main purpose of his law enforcement duties. Huth at 116. See, alsoColumbus v. Stump (1974), 41 Ohio App.2d 81 (an undercover officer who observes a violation of traffic laws and makes an arrest is not incompetent to testify about the arrest simply because he is in an unmarked car and plain clothes).
Because Washburn's primary duty was not the enforcement of traffic laws, he was competent to testify even though he was not in a properly marked vehicle and legally distinctive uniform. Accordingly, the trial court did not err in allowing Washburn to testify.
 B.
Baum also argues that his continued detention after the officers patted him down and searched the car without finding any drugs ("the initial searches") was unconstitutional.
The Fourth Amendment to the United States Constitution guarantees "the right of the People to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 14, Article I, of the Ohio Constitution guarantees the "right of all people to be secure in their person, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the government is prohibited from subjecting individuals to unreasonable searches and seizures. Delaware v. Prouse (1979), 440 U.S. 648,662; State v. Gullet (1992), 78 Ohio App.3d 138, 143.
The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses a reasonable suspicion, based upon specific and reasonable facts, which, taken together with rational inferences from those facts, warrants the belief that criminal behavior is imminent. Terry v. Ohio (1968),392 U.S. 1; United States v. Brignoni Ponce (1978), 422 U.S. 873;State v. Andrews (1991), 57 Ohio St.3d 86; State v. Venham
(1994), 96 Ohio App.3d 649, 654. To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped is about to commit a crime. Prouse at 659;Terry. The propriety of an investigative stop must be reviewed in the light of the totality of the circumstances. State v. Bobo
(1988), 37 Ohio St.3d 177, 178. The scope and duration of the investigative stop must be limited to effectuate the purpose for which the initial stop was made. Venham, 96 Ohio App.3d at 655
citing State v. Berry (Dec. 1, 1993), Washington App. No. 93CA17, unreported.
The officers had reasonable suspicion to continue detaining Baum after the initial searches yielded no drugs. The initial reasonable suspicion, Angel alerting to Baum's vehicle, was not dissipated by the failure of the initial searches to yield any drugs. The officers had not explored all of the possible hiding places for drugs. See, e.g., State v. Calhoun (May 3, 1995), Lorain App. No. 94CA5824, unreported (once a trained drug dog alerts to the odor of drugs, police have probable cause to search the entire vehicle for drugs and may continue to search even if the passenger compartment contains no drugs). Thus, the officers still had reasonable suspicion that Baum had drugs either on his person or in his car, which justified the continued detention of Baum. Accordingly, the continued detention after the initial searches did not violate Baum's Fourth Amendment right to be free of unreasonable seizures.[1] The trial court did not err in failing to grant Baum's motion to suppress.
 III.
In sum, we overrule appellant's assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
[1] In order for Washburn's search of Baum to be valid, Washburn must have had probable cause to believe that Baum had drugs on his person and either a warrant or a valid exception to the warrant requirement. While Washburn may have possessed probable cause, the record does not indicate that they had a warrant or whether a valid exception to the warrant requirement existed. However, we decline to address this issue because neither party raised the propriety of the search during the suppression hearing or in their appellate briefs. See App.R. 12(A)(1)(b).
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
EVANS, J.: Concurs in Judgment and Opinion.
HARSHA, J.: Concurs in Judgment Only.
For the Court
 BY: _______________________________ ROGER L. KLINE, Presiding Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commencesfrom the date of filing with the clerk.