**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Elsie MARTINEZ, Defendant–Appellant.**

No. 90–5504.

United States Court of Appeals,
Eleventh Circuit.

Jan. 7, 1992.

---

Roy I. Kahn, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., William F. Jung, Lynne W. Lamprecht, Linda Collins Hertz and Anne M. Hayes, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY and HATCHETT, Circuit Judges, and HILL, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we affirm the district court and hold that a general consent to search a specific area for specific things includes the authority to open locked containers where those things may be found.

## FACTS

On November 7, 1989, agents of the Drug Enforcement Administration (DEA) and officers of the Broward County Florida Sheriff's Department watched as Elsie Martinez, the appellant, and Alvero Alvarez went through a suspicious morning routine of car switching and circuitous driving. Later in the day, following continuous surveillance, the officers arrested Alvarez carrying one kilogram of cocaine in a suitcase. Because the officers had observed Martinez and Alvarez at a mini-warehouse complex earlier the same day, they proceeded to the residence of Elsie Martinez to obtain her permission to search a storage unit leased in her name.

When the officers arrived at Martinez's residence, they waited outside a fenced yard that contained several large dogs. Remaining on the other side of the fence, the officers told Martinez that they had arrested Alvarez carrying a kilogram of cocaine, and asked Martinez for her permission to search the mini-warehouse unit where they had observed her and Alvarez earlier in the day. The officers explained that they were searching for narcotics. At no time did the officers draw their weapons or threaten Martinez with arrest.

Martinez became visibly upset when informed that Alvarez had been arrested and said that she did not know what to do regarding permission to search the storage unit. The officers encouraged her to contact her lawyer. Because Martinez could not decide whether to allow the search, the officers made several attempts to leave. Each time, Martinez called them back. She also reentered the house twice and returned to the yard to speak with the officers each time. Finally, tiring of Martinez's indecisiveness, the officers returned to their vehicles and began to pull away from the house. Martinez "screamed" at the officers to return. When they returned, she signed a written consent authorizing the agents to search the mini-warehouse unit.

The officers went to the mini-warehouse unit and cut off the lock. Inside, they found a 1949 Dodge coupe surrounded by cardboard boxes. After a search of the boxes revealed no contraband, the officers began searching the passenger compartment of the automobile. Tilting the seat forward, the officers removed a board separating the passenger compartment from the trunk. A perforated metal plate continued to separate the passenger compartment from the trunk. Detective Derstine peered through the plate and into the trunk with the aid of a flashlight. He identified a cardboard box and a triple beam scale case. Using a piece of wire, he overturned the box, finding that it contained brick-sized packages. The officers then pried open the trunk. Inside they found four individually wrapped kilograms of cocaine and a triple-beam scale.

## PROCEDURAL HISTORY

A grand jury charged Martinez on three counts of a four-count indictment with conspiracy, possession, and attempt to distribute cocaine. She moved to suppress the evidence seized from the trunk of the 1949 Dodge on the grounds that the officers coerced her into authorizing the search, and that even if she did consent to the

search, the officers exceeded the scope of her consent. The district court rejected these contentions and held the evidence admissible. After a joint trial with Alvarez, the jury found Martinez guilty of conspiracy, but not guilty of the substantive possession and distribution counts.

## CONTENTIONS

Martinez raises four contentions on appeal. First, she contends that her consent to the search of the mini-warehouse was coerced. Second, she contends that even if her consent was voluntary, the officers exceeded the scope of her consent when they opened the locked trunk of the automobile. Third, Martinez challenges the sufficiency of the evidence used to convict her. Finally, she alleges that the trial court erred in imposing a sentence which failed to account for her minimal role in the drug conspiracy.

## ISSUE

Whether the trial court erred in concluding that the search of the locked trunk did not exceed the scope of Martinez's consent to a search of the mini-warehouse.

## DISCUSSION

■ On these facts, Martinez's consent to the search was voluntary. Thus, we turn our attention to the scope of that consent.

The district court's denial of Martinez's motion to suppress evidence presents a mixed question of law and fact. *United States v. Wilson*, 894 F.2d 1245, 1254 (11th Cir.1990). We review the district court's findings of fact under the clearly erroneous standard. Its application of the law to those facts is subject to *de novo* review. *Wilson*, 894 F.2d at 1254.

■ The fourth amendment protects the people against "unreasonable" searches and seizures. A consensual search is manifestly reasonable so long as it remains within the scope of the consent. *See Florida v. Jimeno*, —— U.S. ——, ——, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 302 (1991). This case presents the question of whether the search conducted was within the scope of the consent given.

■ The scope of a consensual search is determined by the terms of the actual consent. *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir.1990); *United States v. Blake*, 888 F.2d 795, 798 (11th Cir.1989). The terms of the consent govern the scope of the search in the same manner as the specifications in a warrant. *Strickland*, 902 F.2d at 941; *Blake*, 888 F.2d at 798. The government may not exceed the boundaries of the consent, and any evidence gathered beyond those boundaries must be excluded.

■ In this case, Martinez consented to a search of the mini-storage unit leased in her name. Neither the document she signed nor her oral statements to the police placed any limitations on the agents' authority to search the mini-warehouse. The question thus becomes whether Martinez's general consent included permission to search the locked trunk of the 1949 Dodge located therein.

As this court has noted: "When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather, it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir.1991) (quoting *Strickland*, 902 F.2d at 941). In conducting the reasonableness inquiry, the court must consider what the parties knew at the time to be the object of the search. *Florida v. Jimeno*, 111 S.Ct. at 1804, 114 L.Ed.2d at 303; *Harris*, 928 F.2d at 1118. Permission to search a specific area for narcotics, for example, may be construed as permission to search any compartment or container within the specified area where narcotics may be found. *Jimeno*, 111 S.Ct. at 1804, 114 L.Ed.2d at 303; *Harris*, 928 F.2d at 1118. On the other hand, general permission to search does not include permission to inflict intentional damage to the places or things to be searched. *See Strickland*, 902 F.2d at 941–42 (defendant's permission

to search automobile for contraband could not reasonably be construed to include permission to slash spare tire).

In this case, Martinez understood that the officers wanted to search the mini-warehouse unit for narcotics. Under the reasonableness inquiry, her permission to search the mini-warehouse could be construed as permission to search any compartment or container therein that might reasonably contain narcotics, including the 1949 Dodge. The difficulty in this case arises because the trunk of the car was locked. To positively identify and remove the items in the trunk, the police had to pry it open. Martinez argues that breaking the trunk lock exceeded the scope of her consent to the search, just as slashing the spare tire in *Strickland* was held to exceed the scope of the consent in that case.

As noted above, the limits of a consensual search are defined by the terms of the consent in the same way that the scope of a warrant search is defined by the specifications of the warrant. *Strickland,* 902 F.2d at 941; *Blake,* 888 F.2d at 798. Where a warrant has been issued, "a lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982) (footnote omitted). This court has held that a warrant to search a specific area for a certain class of things authorizes government agents to break open locked containers which may contain the objects of the search. *See United States v. Gonzalez,* 940 F.2d 1413, 1420 (11th Cir.1991) (valid warrant to search defendant's house for documents and currency authorized police to search locked briefcase found in house); *United States v. Morris,* 647 F.2d 568, 572–73 (5th Cir. Unit B 1981) (valid warrant to search defendant's home for proceeds of bank robbery authorized search of locked jewelry box).[1] These cases interpreting

search warrants apply with equal force to the interpretation of general consents to search. Thus, we hold that a general consent to search a specific area for specific things includes consent to open locked containers that may contain the objects of the search, in the same manner that such locked containers would be subject to search pursuant to a valid warrant. In this case, the locked trunk was within the scope of Martinez's consent because it was within the area authorized to be searched, and it was reasonably capable of containing the object of the search.

The result we reach today is supported by this court's holding in *United States v. Milian–Rodriguez,* 759 F.2d 1558 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985). In that case, the court held that the defendant's sweeping consent to a search of his office authorized government agents to pick the lock on a closet door. *Milian–Rodriguez,* 759 F.2d at 1563–64. Martinez argues that the court in *Milian–Rodriguez* relied not on the defendant's general consent to the search, but rather on his oral statement to the police that he could provide them with a key to the closet. A close reading of the opinion, however, reveals that the court relied primarily on the general nature of Milian's consent to the search. The court focused on that issue first, referring to Milian's oral statements about the closet key as merely "additional evidence" of his consent. *Milian–Rodriguez,* 759 F.2d at 1564.

Martinez also argues that the holding in *United States v. Strickland* requires suppression of the cocaine found in the trunk of the 1949 Dodge. In *Strickland,* the court held that a general consent to search the defendant's automobile for contraband could not reasonably include permission to slash open the spare tire. 902 F.2d at 941–42. Similarly, Martinez argues, her general consent did not include permission to remove the panel separating the passenger compartment from the trunk, nor to pry open the trunk.

---

1. Decisions of the former Fifth Circuit Unit B are binding precedent in this circuit. *Stein v.*

*Reynolds Securities,* 667 F.2d 33, 34 (11th Cir. 1982).

The officers' actions in this case do not run afoul of *Strickland*. Removal of the panel involved no destruction to the car: it merely allowed the officers to see through a metal plate that remained in place. In *Strickland*, unbolting the spare tire and rolling it around to get a feel for what might be in it was unquestionably within the scope of the search. *Strickland*, 902 F.2d at 939, 943. In both cases, reasonable, nondestructive removal of impediments was necessary to search for contraband and to gain access to other areas or compartments within the scope of the search.

■ As to prying open the trunk, the record does not show, and Martinez does not allege, that it involved the same kind of damage to the automobile as "mutilation" of the spare tire in *Strickland*. 902 F.2d at 942. Indeed, as noted above, forcing open locked compartments or containers has been held to be within the scope of general warrant searches and consent searches. *Gonzalez*, 940 F.2d at 1420; *Morris*, 647 F.2d at 572–73. *Milian–Rodriguez*, 759 F.2d at 1563–64. None of these cases appear to have turned on the damage, or lack of it, inflicted in opening the locked container or compartment.

## CONCLUSION

The district court properly found that the search of the locked automobile trunk was within the scope of the consent to search the mini-warehouse.

Because appellant's other contentions are without merit, the judgment of the district court is affirmed.

AFFIRMED.