David J. Todor appeals his conviction for illegal cultivation of marijuana. He asserts that the Athens County Court of Common Pleas should have granted his motion to suppress the three hundred ninety-four marijuana plants gathered in the warrantless search of his property. We disagree because the area where the marijuana plants were found is an open field. Accordingly, we affirm the judgment of the trial court.
 I.
On July 30, 1997, at approximately 4:15 p.m., a police helicopter pilot spotted a single marijuana plant growing in Todor's backyard. The helicopter pilot radioed this information to the Athens County Sheriff's Office. Four deputies, including Deputy Warren, Deputy Taylor and Deputy Sedwick, went to Todor's residence to investigate. The deputies secured the scene, then spotted the single plant the pilot told them about growing in a fenced-in garden near Todor's house. The helicopter pilot then radioed that he had spotted more plants in an overgrown area further away from the house. The pilot guided the deputies toward the plants by hovering the helicopter over the plants. The officers went into the overgrown area and eventually spotted a total of three hundred ninety-four marijuana plants.
Soon after the deputies arrived on Todor's property, Todor called Tom McGuire and Timothy Foran, both local attorneys. McGuire and Foran arrived at approximately 4:45 p.m. By the time they arrived, Deputy Warren had left to get a warrant. McGuire and Foran stayed with Todor on his back porch until the police arrested Todor. From the porch, McGuire and Foran noticed a cluster of potted marijuana plants about twenty feet from the porch that the deputies had removed from the overgrown area. Deputy Taylor removed these plants because they were blocking the path within the overgrown area.
At about 6:45 p.m., Deputy Warren arrived with a warrant that had been signed by Judge Ward at 6:15 p.m. After the deputies seized the marijuana plants and searched Todor's home, they arrested Todor and charged him with illegal cultivation of marijuana in violation of R.C. 2925.04(A).
Todor filed a motion to suppress the evidence, alleging that the search violated the fourth amendment. The state opposed Todor's motion asserting that the plants were growing in open fields and that they would have inevitably discovered the plants since probable cause supported a warrant.
At the hearing on the motion to suppress, several witnesses testified as to the layout of the property where Todor lived. The house, which sits about fifty feet off Buckley Run Road, is a 19th century farmhouse. The house does not have running water or indoor plumbing. The west side of the house faces Buckley Run Road. Between the house and Buckley Run Road, Todor fashioned a bathing pool from a natural stream on the property. Todor testified that he uses the bathing pool daily during the summer to bathe and cool off. Todor planted a ring of tall grasses around the bathing pool to shield it from public view.
The driveway runs along the north side of the house. Todor uses the porch on the southeast corner of the house as a main entrance. To the south and east of the house Todor maintains a mowed area with gardens and a gazebo. An outhouse is located in the east mowed area. Behind the south mowed area, the property is overgrown and thick with vegetation, including young trees and briars ("overgrown area") A mowed path leads into the overgrown area. This mowed path becomes a dirt path and forks in two directions within the overgrown area. All along the paths within the overgrown area, the officers found clusters of potted marijuana plants. In his affidavit in support of the search warrant, Deputy Warren indicated that police found one hundred fifteen marijuana plants within fifty yards of Todor's residence. Police found an additional two hundred seventy-nine marijuana plants after Deputy Warren left to obtain the warrant.
The trial court suppressed the single plant found in Todor's garden because it grew within the curtilage of Todor's house and the police seized it without a warrant. However, the trial court determined that Todor had no reasonable expectation of privacy in the overgrown area to the south of the house because it was an "open field." Accordingly, the trial court did not suppress the remaining three hundred ninety-three plants. Todor pled no contest to the charge of illegal cultivation. The trial court found him guilty and sentenced him accordingly.
Todor appeals this conviction, asserting the following assignment of error for our review:
 Assignment of Error I: The trial court erred in denying Appellant's motion to suppress marijuana plants which were seized during a warrantless search of Appellant's property in violation of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.
 II.
In his only assignment of error, Todor argues that the police seized the three hundred ninety-three marijuana plants from the curtilage surrounding his home and not from an "open field." He concludes that the trial court erred in denying his motion to suppress these plants.
Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United States v.Martinez (C.A.11 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Carter (1995), 72 Ohio St.3d 545,552. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. The reviewing court then applies the factual findings to the law regarding suppression of evidence. An appellate court reviews the trial court's application of the law de novo. State v. Anderson
(1995), 100 Ohio App.3d 688, 691.
The Fourth Amendment to the United States Constitution guarantees "the right of the People to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Article I, Section 14 of the Ohio Constitution guarantees the "right of all people to be secure in their person, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the state is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. United States v. Chadwick (1977), 433 U.S. 1, 7. Such areas include a person's home and the curtilage surrounding it. Curtilage is the area immediately surrounding a dwelling. UnitedStates v. Dunn (1987), 480 U.S. 294, 300. Factors to consider when determining whether an area is within the curtilage are: (1) the proximity of the alleged curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. Id. at 301.
One does not possess a legitimate expectation of privacy in areas characterized as open fields rather than curtilage. The open fields doctrine, first enunciated by Justice Holmes inHester v. United States (1924), 265 U.S. 57, 59, provides that one does not have a legitimate expectation of privacy in areas beyond the curtilage of a home, despite one's ownership interest in the area. Oliver v. United States (1984), 466 U.S. 170, 178. However, "[am open field need be neither "opens or a "field' as those terms are used in common speech. For example, * * * a thickly wooded area nonetheless may be an open field * * *." Id.
at fn. 11.
Todor contends that, once we identify an area as curtilage under the Dunn factors, we must extend the curtilage by an equal distance at all points around the house. We disagree. We see no reason why points that are equidistant from the house must carry identical expectations of privacy. Distance is only one factor that is relevant to determining curtilage under Dunn. As such, the curtilage of Tudor's home may extend to the bathing pool or the outhouse, but may not extend to the overgrown area even if all three points are equidistant from Todor's house. Accordingly, we analyze whether the overgrown area is curtilage or an open field by using the four Dunn factors.
 A Dunn first requires the court to evaluate the proximity of the alleged curtilage to the home. Competent, credible evidence supports the trial court's finding that all the marijuana plants were located within fifty yards of the house. Deputy Warren's affidavit states that he observed one hundred fifteen plants within fifty yards of the house, and Deputy Warren left before the officers finished gathering and counting the plants from the overgrown area. The overgrown area was relatively close to Todor's home and sites of other intimate activities (the outhouse and the bathing pool). However, the other areas of intimate activities were in different directions from the house than the overgrown area.
 B.
Second, we must determine whether the area is included within an enclosure surrounding the home. Competent, credible evidence supports the trial court's finding that the overgrown area was not within any enclosure surrounding the home. While Todor testified that the bathing pool itself was enclosed, the record contains no evidence that the overgrown area was segregated from the rest of the property so that it was "readily identifiable as part and parcel of the house." See, Dunn, 480 U.S. 294, 302. To the contrary, the area is clearly distinguishable from the mowed portions of Todor's property. It is clear from the record that Todor took affirmative steps to enclose the bathing pool from passers-by. The photographs of the overgrown area show no such enclosure.
 C.
Third, we must examine the nature of the uses to which the area is put. Competent, credible evidence supports the trial court's finding that the area near the bathing pool may have harbored intimate activity associated with the sanctity of Todor's home, but the overgrown area did not. Todor testified that he used the bathing pool daily in the summer for bathing and cooling off. The overgrown area was used primarily for growing marijuana, which is not an activity associated with the sanctity of the home. SeeUnited States v. Traynor (9th Cir. 1993), 990 F.2d 1153; UnitedStates v. Brady (9th Cir. 1993), 993 F.2d 177.
 D.
The fourth and final factor we must consider is whether the resident took steps to protect the area from observation by passers-by. Competent, credible evidence supports the trial court's finding that Todor took no steps to keep others from looking at or going into the overgrown area. The pictures of the overgrown area show the entrance to the area as a path. While the overgrowth may have prevented people from directly viewing the property, access to the overgrown area via the path was not blocked in any way. Todor took no actions, other than letting the plants grow, to protect the area from others. Todor's action in mowing the path indicates the opposite: that the area was accessible to passers-by.
 E.
Applying these factual findings to the "open fields" doctrine, we find that, although the overgrown area was relatively close to Todor's residence, the clarity of the other factors outweigh the proximity of the overgrown area to the home.
Because we find that the overgrown area is an open field, we find that the trial court did not err in overruling Todor's motion to suppress.
 III.
In conclusion, we overrule appellant's assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Harsha, J.: Concur in Judgment and Opinion.
For the Court
Roger L. Kline, Presiding Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commencesfrom the date of filing with the clerk.