Steven Nesser appeals the decision of the Juvenile Division of the Ross County Common Pleas Court that adjudicated him a delinquent child because he committed an act which would have been a violation of R.C. 2925.11
(Drug Abuse) had he been an adult. Steven argues that the police did not have reasonable suspicion to detain him by asking him where he was going, and thus the search conducted by the arresting officer violated his right to be free from unlawful searches and seizures. Because we find that the officer's question did not rise to the level of an investigatory stop, we disagree. Accordingly, we affirm the judgment of the trial court.
 I.
On February 1, 2000, Chillicothe Police Officer Sandra Sexton was patrolling an area due to citizen complaints of drug dealing. As she was driving her cruiser, she spotted Johnny Nesser, who began to duck away from her. He turned away and yelled that he didn't want to talk to her. Officer Sexton asked Johnny why he didn't want to talk to her and he said, "What, what, you want to check me. Come on, you can check me." As Officer Sexton got out of her car to search Johnny, Steven was standing off to the side. When she started to pat down Johnny, Steven began to walk away. Officer Sexton turned to Steven and said, "Where are you going." Steven replied, "What you want to check me too?" As he said this, he shoved his hand down the front of his pants. Officer Sexton responded by telling Officer Campbell, who had just arrived on the scene, to check Johnny. Officer Sexton then went to Steven and took his hand out of his pants and put both of his hands on her patrol car. As she questioned Steven about why he had put his hand down his pants, Steven tried to stick his other hand down the front of his pants. Officer Sexton became concerned about Steven's movements. For her own and the other officer's safety, she began to pat down Steven and check his pockets. At this point Steven began to wiggle around and tried to step away with his left foot. As Officer Sexton directed Steven to stop this, she grabbed his left foot and scooted it back towards the patrol car. She then noticed the baggie of crack cocaine on the ground.
The Chillicothe Police Department filed a complaint alleging that Steven was a delinquent child because he knowingly possessed crack cocaine, which is a violation of R.C. 2925.11(C)(4). Steven moved to suppress the baggie of crack cocaine because the search that produced the crack cocaine was a warrantless and unlawful search.
At the suppression hearing, Officer Sexton related the events of the night that she arrested Steven and testified that Steven was free to walk away from his encounter with her until she grabbed him and put his hands on her patrol car. She stated that she asked Steven where he was going because he became nervous when she started to check Johnny. She testified that she never intended her question to stop Steven from leaving the area. She also testified that Steven's first "suspicious" act was putting his hand down his pants. She stated that she believed that Steven's search started out as a consensual search until he stuck his hand down his pants and then she needed to search him because of his actions.
The magistrate found that Steven responded to Officer Sexton's inquiry about where he was going by asking her if she wanted to check him out too. The magistrate also found that there was no evidence regarding Officer Sexton's tone of voice or that Steven felt that he was prevented from leaving the area when Officer Sexton asked Steven where he was going. The magistrate concluded: (1) that Steven's initial contact with Officer Sexton was voluntary, (2) that Officer Sexton's inquiry regarding his destination was not a show of authority or detention, and (3) that when Steven shoved his hands into his pants, Officer Sexton was justified in performing a Terry stop and frisk of Steven. The Magistrate overruled Steven's motion to suppress.
The trial court adjudicated Steven a delinquent child and committed Steven to the custody of the Department of Youth Services. Steven appeals and asserts the following assignment of error:
 The trial court erred by improperly considering evidence that was obtained from the illegal search and seizure in violation of the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution.
 II.
In his only assignment of error, Steven contends that the crack cocaine found at his feet was the fruit of an illegal search and therefore inadmissible. He asserts that the trial court should have suppressed the crack cocaine because the arresting officer unconstitutionally seized him and then unconstitutionally searched him.
Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United States v. Martinez
(C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility.State v. Carter (1995), 72 Ohio St.3d 545, 552. A reviewing court should not disturb the trial court's findings on the issue of credibility. Statev. Mills (1992), 62 Ohio St.3d 357, 366. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court reviews the trial court's application of the law de novo.State v. Anderson (1995), 100 Ohio App.3d 688, 691.
The Fourth Amendment to the United States Constitution guarantees "the right of the People to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 14, ArticleI, of the Ohio Constitution guarantees the "right of all people to be secure in their person, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the government is prohibited from subjecting individuals to unreasonable searches and seizures. Delaware v. Prouse (1979), 440 U.S. 648, 662; State v. Gullett
(1992), 78 Ohio App.3d 138, 143.
The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop (a "Terry stop") if the officer possesses a reasonable suspicion, based upon specific and reasonable facts, which, taken together with rational inferences from those facts, warrants the belief that criminal behavior is imminent. Terry v. Ohio (1968), 392 U.S. 1; United States v.Brigoni-Ponce (1978), 422 U.S. 873; State v. Andrews (1991),57 Ohio St.3d 86. To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped is about to commit a crime. Prouse at 659; Terry. The propriety of an investigative stop must be reviewed in the light of the totality of the circumstances.State v. Bobo (1988), 37 Ohio St.3d 177, 178.
A police officer's subjective intentions play no role in ordinary probable cause Fourth Amendment analysis. Whren v. United States (1996),517 U.S. 806, 813. This concept applies equally to investigative stops.State v. Thompson (Mar. 12, 1997), Athens App. No. 96CA1748, unreported.
 A.
Steven first argues that Officer Sexton seized him when she asked him where he was going. He asserts that a reasonable person would interpret this comment as an order not to leave. The state argues that this encounter began as a consensual encounter and that Officer Sexton's question did not affect the consensual nature of the encounter.
An encounter is consensual "where the police approach a person in a public place, engage the person in a conversation, request information, and the person is free not to answer and walk away." State v. Taylor
(1995), 106 Ohio App.3d 741, 747, citing United States v. Mendenhall
(1980), 446 U.S. 544, 553. The constitutional guarantees regarding searches and seizures are not implicated in such an encounter "unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." Taylor, at 747-748, citing Mendelhall, at 554, and Terry,
16, 19.
We are at a disadvantage in interpreting Officer Sexton's comment because so much of the meaning of this type of comment is carried in the tone of voice of the person making it. The magistrate found that there was no evidence concerning Officer Sexton's tone of voice, other than Officer Sexton's own explanation of what occurred. However, we are confident Officer Sexton's question to Steven, standing alone, was not physical force or a show of authority that restrained Steven's liberty so that a reasonable person would not have felt free to decline her request for information or otherwise terminate the encounter. Accordingly, we find that Officer Sexton's question did not change a consensual encounter into an investigatory stop.
 B.
Steven next argues that, when Officer Sexton seized Steven by asking him where he was going, she did not have specific and articulable facts supporting a reasonable suspicion that he was engaged in criminal activity. Because we have found that at the point that Officer Sexton asked Steven where he was going, the encounter was still consensual, Officer Sexton was not required comply with the requirements for an investigative stop. Accordingly, we overrule Steven's only assignment of error.
 III.
In sum, we overrule Steven's only assignment of error, and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Division of the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________ Kline, P.J.
Evans, J. and Harhsa, J.: Concur in Judgment and Opinion.