DECISION AND JUDGMENT ENTRY
Matthew L. Swanner appeals his conviction for gross sexual imposition, a violation of R.C. 2907.05(A)(4). He asserts that the trial court erred in denying his motion to suppress the videotape of his interview with Scioto County Sheriff Department Detective Darrell Keller. Because we find that Swanner was not in the custody of the Sheriff's Department, we disagree. Swanner also asserts that the trial court erred in sua sponte
amending the indictment. Because Swanner failed to object to the amendment during the proceedings below and because we find that the amendment was not plain error, we disagree. Swanner next asserts that there was insufficient evidence to convict him because the state failed to prove that his five-year old victim was not his spouse. Because we find that Swanner has waived this argument, we do not address it. Finally, Swanner argues that his conviction is against the manifest weight of the evidence. Because we find that the trial court did not create a manifest miscarriage of justice in resolving conflicts in the evidence, we disagree. Accordingly, we affirm the judgment of the trial court.
 I.
In March 2000, the grand jury indicted Matthew Swanner for engaging in sexual conduct with a five-year old girl "on or about the 11th day of November, 1999," a violation of R.C. 2907.02(A)(1)(b).
Swanner filed a notice of alibi, claiming that he was at John Swanner's residence on November 11, 1999. Swanner also filed a motion to suppress statements he made during the interrogation with Detective Keller. He asserted that the interview violated his right to counsel and that he was in the custody of the state without benefit of the Miranda warnings. He asserted that he believed that he was not free to leave the interview when he made incriminating statements.
The trial court held a hearing on the motion to suppress, but did not hear witnesses. Instead, the court viewed the videotape of the interview and heard arguments of counsel.[1]
At the beginning of the interrogation, Keller repeatedly informs Swanner that he can leave and doesn't have to be at the interview. A short time into the interview, Keller offers to get Swanner something to drink. After further explaining what the victim told authorities, Keller told Swanner that "anytime you want to get up and walk out of here you can." Keller then ensured that Swanner had a way to get home, if he decided to leave. Keller repeatedly told Swanner that he did not want Swanner to admit to something that he did not do. Keller tried to get Swanner to take polygraph and voice stress tests, but Swanner refused.
Keller told Swanner that a jury would convict Swanner. Keller implied that if Swanner admitted the charges, he would receive a lighter sentence and maybe not even have to go to jail. Swanner continued to deny the charges, but asked questions about what would happen if he admitted the charges. Keller told Swanner that even if he admitted the charges that he could leave. He then stated "I can guarantee you that you will walk out of this door whenever you want to." Keller later assured Swanner that if he pled guilty, the case wouldn't be in the newspaper.
Keller then told Swanner that he already had enough information to convict him, but that he wanted to hear Swanner's side of the story. Swanner again denied the charges, but said that pleading guilty seemed like a good idea. Swanner asked several questions about what would happen if he admitted the charges and several questions about the strength of the case against him. Then the following exchange took place.
 KELLER: Let me ask you one question for a truthful answer. Did you do it or not?
SWANNER: No.
KELLER: Okay, you're done. (Keller exits the room)
SWANNER: So I can leave when I want to?
PAUSE IN TAPE
KELLER: Okay.
 SWANNER: I actually need, is there anyway that I can talk to my attorney first.
KELLER: Sure can.
SWANNER: Because I would like to check all this with him.
KELLER: If you're asking for an attorney we have to stop.
 SWANNER: No, no, no I am just saying, I was wanting to ask him (inaudible) it was pertaining to my other case.
 KELLER: We'll (sic) if you're asking for an attorney in this case we have to stop the interview and I am not allowed to question you any more, if that's what you're doing.
SWANNER: No.
 KELLER: So you're not asking to see an attorney in this case?
SWANNER: No, not yet.
KELLER: Okay, but we got to be clear on that, okay.
 SWANNER: Now you're telling me right now I can walk out of here today without looking back. Nobody is going to slap cuffs on me?
 KELLER: And if there is any Court proceeding I will have those papers come to me and I will call you up * * *.
Swanner denied inserting his finger into the victim's vagina, but admitted to scraping her with his fingernail. Swanner then said he might have touched the victim by accident. Keller informed Swanner that the victim said that Swanner put his finger into her vagina. Then the following discussion took place:
 KELLER: Somehow your finger had to get in her vagina. Now what people think, you know, is that it went in that far. If that's not true.
SWANNER: It's not, that is not true.
 KELLER: You got to show where and how far. Just there and it was ran through the slit, you know and you didn't do anything further, maybe the thing is "oh, what am I doing? I'm not doing this" and you stopped. That's understandable, okay. That's understandable.
 SWANNER: Well, I know, you just basically told the whole story.
KELLER: And that's the truth?
 SWANNER: Yes, I can't believe that you just told the whole story.
KELLER: That's what happened?
SWANNER: Yes. Can I go?
KELLER: You can go anytime you want to.
SWANNER: Well, you've got the story.
KELLER: Let me ask you one other question. When was that?
SWANNER: That was back in November.
* * *
Later, Swanner further explained what happened:
 KELLLER: But you're saying only the tip of your finger went in, that was it?
SWANNER: Barely touched.
KELLER: How was it[,] bare or was it under the pants?
 SWANNER: I don't remember. I mean, my mind just went blank. I didn't realize what I was doing, well, what the, you know.
KELLER: What kind of pants did she have on? Was it pants?
SWANNER: I think she had on pants, but I can't be sure.
The interview ended shortly thereafter.
The trial court denied Swanner's motion to suppress. On May 16, 2000, the trial court sua sponte amended the indictment to list the date of the offense as "on or about November, 1999" instead of "on or about the 11th day of November, 1999." Also in May 2000, Swanner waived his right to a jury trial.
On June 1, 2000, the trial court determined that the victim was competent to testify. On June 5, 2000, the trial court held a trial.
At the trial, the victim testified that she was five years old, that Swanner put his finger in her "kitty-cat," and that her "kitty-cat" was her groin area. A Scioto County caseworker testified that the victim told her that Swanner had touched her "kitty-cat." The trial court admitted the videotape of Swanner's interview with Detective Keller.
Swanner argued that the victim's mother coached the victim into making the accusation because the victim's mother wanted revenge on Dee Pollock, Swanner's mother. Pollock and the victim's grandfather were married. The victim's grandfather testified that the victim's mother hated Pollock and wanted revenge against her. He also testified that he and Pollock had separated and that he would do whatever was necessary to get her back.
Swanner testified that he lied during the interview with Detective Keller because he was scared. He also denied penetrating or touching the victim's vagina.
The trial court found Swanner guilty of the lesser included offense of gross sexual imposition, a violation of R.C. 2907.05(A)(4). The trial court then found Swanner to be a sexually oriented offender and sentenced him to three years imprisonment.
Swanner appeals and asserts the following assignments of error:
 I. THE COURT ERRED WHEN IT DENIED APPELLANT-DEFENDANT'S MOTION TO SUPPRESS HIS VIDEOTAPED STATEMENT.
 II. THE COURT ERRED WHEN IT AMENDED THE INDICTMENT SUA SPONTE.
 III. THE COURT ERRED WHEN IT FOUND THE APPELLANT-DEFENDANT GUILTY EVEN THOUGH THE STATE DID NOT PRESENT OR PROVE BEYOND A REASONABLE DOUBT ALL THE ELEMENTS OF THE CASE.
 IV. THE VERDICT WAS BEYOND THE MANIFEST WEIGHT OF THE EVIDENCE.
 I.
In his first assignment of error, Swanner argues that the trial court erred by overruling his motion to suppress the videotaped interrogation. He asserts that the videotape indicates that during the interview, Swanner attempted to leave the interview room but stopped at the door and stated "I thought you said I could leave whenever I wanted." He argues that from this point forward he was in the Sheriff's Department's custody.[2] The state argues that Swanner was prevented from leaving the interview room without an escort because civilians are not permitted to walk around the office unattended.
Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. State v. McNamara (1997),124 Ohio App.3d 706, citing United States v. Martinez (C.A. 11, 1992),949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v.Carter (1995), 72 Ohio St.3d 545, 552. We must accept a trial court's factual findings if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594. We then apply the factual findings to the law regarding suppression of evidence. Finally, we review the trial court's application of the law to those facts under the de novo standard of review. State v. Anderson (1995),100 Ohio App.3d 688, 691.
The Fifth Amendment to United States Constitution guarantees that no person shall be compelled to be a witness against himself. To effectuate this and other federal constitutional rights, the United States Supreme Court has held that evidence obtained from a custodial interrogation may not be used against a defendant if he was not adequately apprised of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to the presence of retained or appointed counsel during questioning. Miranda v. Arizona (1966),384 U.S. 436, 444. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. Thus, Miranda warnings are required when an individual is in custody.
An individual is in custody when there is a formal arrest or an equivalent restraint on the individual's freedom of movement. Californiav. Beheler (1983), 463 U.S. 1121, 1125. When determining whether an individual was in custody, the relevant inquiry is whether a reasonable person in the individual's position would have believed that he was notfree to leave under the totality of the circumstances. Berkemer v.McCarty (1984), 468 U.S. 420, 442; State v. Gumm (1995), 73 Ohio St.3d 413,429. The subjective intent of the law enforcement officer as well as the subjective belief of the defendant has no bearing on the determination of whether a defendant is in custody. Berkemer.
The state has the burden of proving either that a subject's statement was voluntary and not in response to custodial interrogation, or that the subject voluntarily, knowingly, and intelligently waived his Miranda
rights. Colorado v. Connelly (1986), 479 U.S. 157, 168; Florida v. Royer
(1983), 460 U.S. 491; Tague v. Louisiana (1980), 444 U.S. 469. To prove that the suspect voluntarily interacted with the police officer, the totality of the circumstances must indicate that a reasonable person in the suspect's position would believe that he or she could in fact leave.State v. Robinette (1997) 80 Ohio St.3d 234, paragraph three of the syllabus.
We find that the totality of the circumstances indicate that a reasonable person in Swanner's place would believe that he could in fact leave. The transcript of the tape is replete with instances where Detective Keller told Swanner that he was free to get up and walk out of the interview. Swanner argues that at one point during the taped interview, he got up to leave the room, stopped at the doorway and stated, "I thought you said that I could leave whenever I wanted." While this statement does not appear in the transcript of the tape, we find that even such a statement did not transform the interview to a custodial interrogation. Detective Keller repeatedly told Swanner that he could go any time he wanted to. Even after Swanner made the incriminating statements, Detective Keller told Swanner that he could go whenever he wanted to. We conclude that Swanner's statements to Detective Keller were voluntarily made and not the result of custodial interrogation. Therefore, Detective Keller did not violate Swanner's constitutional rights by failing to read him Miranda warnings. Accordingly, we find that the trial court did not err in overruling Swanner's motion to suppress and overrule his first assignment of error.
 III.
In his second assignment of error, Swanner argues that the trial court erred by sua sponte amending the indictment.
The failure to promptly object and call any error to the attention of the trial court, at a time when it could have been prevented or corrected, amounts to a waiver of such error. State v. Lott (1990),51 Ohio St.3d 160, 174, citing State v. Gordon (1971), 28 Ohio St.2d 45, at paragraph two of the syllabus. Here, Swanner failed to object to the trial court's amendment of the indictment either in writing or at the trial and therefore waives all but plain error.
"Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111. Swanner argues that he was prejudiced by the amendment because he could no longer rely on his alibi. Assumingarguendo that the trial court erred in sua sponte amending the indictment, we find that the amendment was not a manifest miscarriage of justice. As such, we find that there is no plain error. Accordingly, we overrule Swanner's second assignment of error.
 IV.
In his third assignment of error, Swanner asserts that the trial court erred when it found him guilty because the state did not prove all the elements beyond a reasonable doubt. He asserts that the state did not prove that the five-year-old victim was not his spouse.
Although Swanner's argument is not articulated as a challenge to the sufficiency of the evidence, the substance of his argument challenges the sufficiency of the evidence. However, when Swanner moved for a judgment of acquittal pursuant to Crim.R. 29 at the close of the state's case, he did so only on the grounds that the state had failed to prove venue and that the victim was under thirteen years of age. He did not renew his Crim.R. 29 motion at the end of the case or argue that the state had failed to prove that he was not married to the victim.
Swanner did not waive his Crim.R. 29 motion by failing to renew it because his case was tried to the court. State v. Metz (Jan. 24, 2001), Summit App. No. 20144, unreported, citing Dayton v. Rogers (1979),60 Ohio St.2d 162, 163, overruled on other grounds, State v. Lazzaro
(1996), 76 Ohio St.3d 261. However, because Swanner set forth specific grounds in his Crim.R. 29 motion, but did not include the argument that the state failed to prove that the victim was not his spouse, he waived this argument.[3] State v. Cayson (May 14, 1998), Cuyahoga App. No. 72712, unreported, citing United States v. Dandy (C.A.6, 1993),998 F.2d 1344, 1356-1357; United States v. Rivera (C.A.2, 1968),388 F.2d 545, 548. Accordingly, we overrule his third assignment of error.
 IV.
In his fourth assignment of error, Swanner argues that the verdict is against the manifest weight of the evidence. He asserts that the videotape should have been suppressed, an argument that we rejected in our discussion of Swanner's first assignment of error. Swanner also asserts that his admissions on the tape do not establish any element of the crime. He asserts that because the victim's testimony is confusing, self-contradictory and vague, the trial court erred in relying upon it.
In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. In making such a determination, we sit as an additional trier of fact. Thompkins at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. However, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins at 387, quoting Martin at 172.
R.C. 2907.05 provides in part:
 (A) (A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
 (4) The other person * * * is less than thirteen years of age * * *.
 (B) Whoever violates this section is guilty of gross sexual imposition.
Sexual contact includes the touching of another's thigh, genitals, or pubic region for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B).
After thoroughly reviewing the entire record, we find that the trial court did not clearly lose its way and create a manifest miscarriage of justice by convicting Swanner of gross sexual imposition. The victim testified that Swanner touched her "kitty-cat" and identified her "kitty-cat" as being part of her groin area. While the victim's testimony is confusing at times and she appears to answer similar questions differently, we do not find that the trial court created a manifest miscarriage of justice in believing her testimony. Swanner's statements to Detective Keller corroborate the victim's testimony and provide additional evidence that Swanner intentionally touched the victim's vaginal area. Further, the victim told the same version of events to her mother and the caseworker that interviewed her. The victim's doctor testified that the results of his examination of the victim's vaginal area were consistent with prior sexual abuse. The victim testified that she was five years old at the time of the trial. The victim's age and the responses of the witnesses when asked about the relationship between the victim, Swanner and the victim's mother indicate that the victim was not Swanner's spouse. When asked who the victim was, Swanner identified her as his stepsister's daughter and did not identify the victim as his spouse. Therefore, we find that the trial court did not lose its way and create a manifest miscarriage of justice in resolving conflicts in the evidence. Accordingly, we overrule Swanner's fourth assignment of error.
 V.
In sum, we overrule all of Swanner's assignments of error and affirm the judgment of the trial court.
[1] There was no transcript of the hearing in the record. However, upon our order the clerk supplemented the record with a transcript of the videotaped interview.
[2] Although Swanner did not make this exact argument in the trial court, he argued the issue of custody. Therefore, we consider his argument on appeal.
[3] Since Swanner raised the argument that the state had failed to prove that the victim was not his spouse in his closing argument, we will consider it in his next assignment of error, which asserts that the verdict was against the manifest weight of the evidence.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _____________________ Roger L. Kline, Judge
Abele, P.J. and Evans, J. concur in judgment and opinion.