DECISION AND JUDGMENT ENTRY
{¶ 1} The Athens County Court of Common Pleas convicted Robert Schoolcraft of one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, a violation of R.C. 2925.04(A), and one count of Aggravated Possession of Drugs, a violation of R.C. 2925.11(A). Schoolcraft appeals, asserting that the court erred when it denied his motion to suppress the evidence obtained against him in his encounter with Sergeant Brian Cooper of the Athens County Sheriff's Department. Because Sgt. Cooper's request that Schoolcraft provide identification information did not render his encounter with Schoolcraft non-consensual, and because a reasonable person in Schoolcraft's position would have felt free to leave, we disagree. Accordingly, we overrule Schoolcraft's assignment of error and affirm the judgment of the trial court.
 I. {¶ 2} On January 11, 2002, Sgt. Cooper was following a truck driven by Schoolcraft. While Sgt. Cooper was following the truck, Schoolcraft stopped the truck in the middle of the road, got out, and started looking under the seat or dashboard. After several minutes, Schoolcraft started walking back toward Sgt. Cooper's cruiser. Because it was dark outside and in order to identify himself, Sgt. Cooper activated his takedown and overhead lights. As Schoolcraft continued to approach, Sgt. Cooper exited his cruiser and asked Schoolcraft if there was a problem.
 {¶ 3} Schoolcraft told Sgt. Cooper that he had blown a fuse in his stereo, and asked Sgt. Cooper if he could borrow a flashlight. Sgt. Cooper asked Schoolcraft for his social security number. Sgt. Cooper later testified that he always asks motorists for their social security number before providing assistance, so that his dispatcher has a way of following up if his safety is compromised in the course of assisting the motorist. After Schoolcraft provided his social security number, Sgt. Cooper called it in to the dispatcher.
 {¶ 4} Sgt. Cooper asked Schoolcraft if he had a driver's license, and asked if he had any outstanding warrants. He then asked whether Schoolcraft was carrying anything that he should be concerned about. Schoolcraft asked if he was under arrest. Sgt. Cooper told him he was not, and asked Schoolcraft if he could pat him down for weapons. Sgt. Cooper informed Schoolcraft he had the right to refuse. Schoolcraft consented to the pat down. When Sgt. Cooper discovered what he thought was a pill bottle in Schoolcraft's jacket pocket, Schoolcraft again asked if he was under arrest. Sgt. Cooper again informed him that he was not. Schoolcraft told Sgt. Cooper that he did not want the sergeant to pat him down anymore.
 {¶ 5} At that point, Sgt. Cooper's dispatcher radioed to inform Sgt. Cooper that the search on the social security number Schoolcraft provided revealed that Schoolcraft did not have a valid driver's license. Based upon the dispatcher's information, Sgt. Cooper then placed Schoolcraft under arrest for driving under suspension. Sgt. Cooper performed a thorough search incident to the arrest, and discovered the pill bottle containing methamphetamine.
 {¶ 6} The State brought a two count indictment against Schoolcraft. Schoolcraft filed a motion to suppress the evidence obtained by Sgt. Cooper on the grounds that Sgt. Cooper impermissibly forced Schoolcraft to submit to a search without probable cause. The trial court denied Schoolcraft's motion. Schoolcraft brought a second motion to suppress on different grounds, but the trial court again denied his motion. Schoolcraft then pled no contest to the two counts, and the trial court found him guilty and entered judgment and sentence accordingly.
 {¶ 7} Schoolcraft appeals, asserting the following assignment of error: "The trial court erred by failing to rule that Schoolcraft's consent to the initial search was involuntary."
 I. {¶ 8} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. State v. McNamara
(1997), 124 Ohio App.3d 706, citing United States v. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v.Carter (1995), 72 Ohio St.3d 545, 552. We must accept a trial court's factual findings if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594. We then apply the factual findings to the law regarding suppression of evidence. Finally, we review the trial court's application of the law to those facts under the de novo standard of review. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 9} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. California v. Acevedo (1991), 500 U.S. 565;State v. Tincher (1988), 47 Ohio App.3d 188. If evidence is obtained through actions that violate an accused's Fourth Amendment rights, exclusion of the evidence at trial is mandated. Mapp v. Ohio (1961),367 U.S. 643.
 {¶ 10} Not every encounter between a citizen and a law enforcement official implicates the state and federal prohibition on unreasonable searches and seizures. California v. Hodari D. (1991), 499 U.S. 621;State v. Taylor (1995), 106 Ohio App.3d 741. The United States Supreme Court has created three categories of police-citizen contact to identify the separate situations where constitutional guarantees are implicated: (1) consensual encounters, (2) investigative or "Terry" stops, and (3) arrests. See Florida v. Royer (1982), 460 U.S. 491, 501-507; UnitedStates v. Mendenhall (1980), 446 U.S. 544, 553; Lyndhurst v. Sadowski
(Sept. 2, 1999), Cuyahoga App. No. 74313, unreported.
 {¶ 11} Police may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion of criminal activity. Mendenhall at 556. Encounters between the police and the public are consensual when the police approach an individual in a public place, engage the person in conversation, and request information, as long as the person is free to walk away. See Mendenhall at 554; State v. Jones
(1996), 112 Ohio App.3d 206, 211. An officer's request to examine a person's identification or search his or her belongings does not render an encounter non-consensual; nor does the officer's neglect to inform the individual that he is free to walk away. See Florida v. Rodriguez
(1984), 469 U.S. 1; Florida v. Bostick (1991), 501 U.S. 429; Jones at 211-213.
 {¶ 12} A "seizure" giving rise to Fourth Amendment concerns occurs only when, in view of all the circumstances surrounding the incident, the police officer, either by physical force or by show of authority, restrains the person's liberty so that a reasonable person would not feel free to decline the officer's request and walk away. State v. Williams
(1990), 51 Ohio St.3d 58, 61; Jones at 211. This "reasonable person" test is based upon the state of mind of an innocent person, not a person engaged in criminal activity. Bostick at 438. Factors suggesting that a seizure has occurred include the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the person. Mendenhall at 554; Jones at 211.
 {¶ 13} In this case, Schoolcraft approached Sgt. Cooper. Sgt. Cooper did not render the encounter non-consensual by asking for Schoolcraft's social security number, as that request merely amounted to a request for identification. Sgt. Cooper told Schoolcraft that he was not under arrest, and Schoolcraft felt free to tell Sgt. Cooper when he no longer wished to consent to the pat down search. Under the circumstances, we find that a reasonable person would have felt free to walk away from Sgt. Cooper up until the time that Sgt. Cooper learned that Schoolcraft did not have a valid driver's license. At that time, Sgt. Cooper had probable cause to arrest Schoolcraft for driving under suspension. The discovery of the methamphetamine resulted from the search incident to that arrest. In short, we find no error in the trial court's determination that Schoolcraft's encounter with Sgt. Cooper in which he provided identification information was voluntary. Accordingly, we overrule Schoolcraft's assignment of error, and we affirm the judgment of the trial court.
Judgment Affirmed.
Harsha, J. and Evans, J., concur in Judgment and Opinion.