[Cite as *State v. Williams*, 2019-Ohio-5144.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                   Court of Appeals No. E-18-024

    Appellee                                Trial Court No. 2016 CR 0349

v.

Dwayne Williams                            **DECISION AND JUDGMENT**

    Appellant                               Decided:  December 13, 2019

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Anthony A. Battista III, for appellee.

Ronnie L. Wingate, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Dwayne Williams, appeals the August 3, 2017 judgment of the
Erie County Court of Common Pleas denying his motion to suppress the identification of
appellant by the victim, D.C.  We affirm because the identification of appellant was not
impermissibly suggestive and was otherwise reliable.

**{¶ 2}** Appellant brings one assignment of error:

The trial court erred to the prejudice of Mr. Williams when it denied his motion to suppress, and renewed motion to suppress, the pretrial identification of Mr. Williams by D.C.

## Facts

**{¶ 3}** On June 1, 2016, at about 2:00 a.m., two men entered the home of D.C. and held him and four others at gunpoint for approximately 20 minutes while the home was burglarized. The men had masks on that covered the lower half of their faces. The two men obtained cash and a cellular phone from the victims. When the suspects demanded more money, D.C. indicated there was additional money in another apartment. When the men and D.C. got onto the back porch, D.C. was able to jump back into the house and quickly close the door, leaving the men outside. D.C. then contacted the police.

**{¶ 4}** When the police arrived, D.C. was deeply upset after the robbery and was unable to make a statement to the police. The other victims, including D.C.'s wife, were able to make statements to the police about what they witnessed and gave a description of the suspects. Two days later, Sandusky Police Detective Ken Nixon returned to the home and interviewed D.C. and his wife. D.C. then gave a detailed description of the night, the suspects, and the weapons used in the crime.

**{¶ 5}** At that time, D.C. indicated that he believed appellant was one of the men who held him at gunpoint during the robbery. D.C. stated that he knew appellant from a party on the Fourth of July. He stated that he knew appellant's voice from this party as

2.

well. D.C. also told the detective that he was told by a third party that appellant may have been involved with the crime. D.C. then showed the detective a photograph from Facebook and stated he believed the photograph showed both men who burglarized his home.

{¶ 6} Detective Nixon did not indicate to D.C. that the man in the photograph was appellant or that the detective suspected appellant in a separate robbery. Nixon then had a photo lineup created and administered to D.C. by a blind administrator. The photo used in the lineup was not the same photo that was shown by the detective on Facebook. The photo lineup was created by a computer program called the Ohio Law Enforcement Gateway and placed five photos of men of similar characteristics of appellant into the photo array. After viewing the photo lineup, D.C. indicated that he was positive appellant was one of the men in the photo lineup. D.C.'s wife identified the other suspect in a separate lineup.

{¶ 7} Appellant was then charged with five counts of aggravated burglary in violation of R.C. 2911.11(A)(2), five counts of aggravated robbery in violation of R.C. 2911.01(A)(1), five counts of felonious assault in violation of R.C. 2903.11(A)(2), and three counts of complicity to commit theft in violation of R.C. 2923.03(A)(2). The fifteen counts of aggravated burglary, aggravated robbery, and felonious assault had firearm specifications under R.C. 2941.145 attached to each count.

{¶ 8} Appellant filed a motion to suppress seeking to suppress the identification of appellant. Appellant also sought to suppress evidence gained from a warrant issued for

3.

his cell phone. Appellant did not appeal that portion of the decision. At the suppression hearing, Detective Nixon testified about the creation of the lineup and the process that occurred prior to the identification of appellant. He also testified about the events of the night and any factors concerning D.C.'s ability to identify appellant.

{¶ 9} The trial court denied appellant's motion to suppress. The trial court found that the identification procedure was not unnecessarily suggestive because the photo lineup was obtained through a computer program and was administered by a blind administrator. The trial court also found that the identification was reliable because appellant's mask did not hide his entire face, appellant was in the house for more than 20 minutes, D.C.'s description of appellant was consistent, and he indicated that he was positive of the identification.

{¶ 10} Appellant was found guilty of all charges by a jury. Appellant was then sentenced to an aggregate term of 37 years.

**Law**

{¶ 11} "An appellate review of a ruling on a motion to suppress presents mixed questions of law and fact." *State v. Heflin*, 6th Dist. Lucas No. L-10-1268, 2011-Ohio-4134, ¶ 16, citing *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir.1992). The trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility at the suppression hearing. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "As a result, an appellate court must accept a trial court's factual findings if they are supported by competent and

4.

credible evidence." *Id.*, citing *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726 (4th Dist.1993). We review the trial court's application of law de novo. *Id.*, citing *State v. Russell*, 127 Ohio App.3d 414, 416, 713 N.E.2d 56 (9th Dist.1998).

> Photo array evidence is suppressed only if the identification, or method of identification, is unduly suggestive and unreliable. The defendant has the burden to show that the identification procedure was unduly suggestive. If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. If the defendant meets his or her burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. Factors to be considered in determining the reliability and suggestiveness of a challenged identification include: (1) the victim's opportunity to view the defendant during the crime, (2) the victim's degree of attention, (3) the accuracy of the victim's prior description, if any, of the defendant, (4) the victim's certainty, and (5) the amount of time that has elapsed between the offense and the identification." (Citations omitted). *Id.* at ¶ 17.

### Analysis

{¶ 12} We do not find that the procedure used in this case was unduly suggestive. Appellant argues that because D.C. had already viewed a photo of him, the procedure of a

5.

photo lineup was suggestive. However, at no time did Detective Nixon identify appellant to D.C. Nixon returned to the police station to create a photo lineup with computer software that provides five other pictures of men with similar stature, age, hair, eye color, and race as appellant to put into the photo lineup. Appellant was not placed into the first slot for the express purpose of removing any possible suggestion he was the suspect who committed the crime. The photo lineup was administered by another officer who did not know who the suspect was or if a suspect was even present in the photo lineup. Detective Nixon was not present when the photo lineup was administered to D.C. No evidence in the record demonstrates that any officer influenced D.C.'s identification of appellant. Therefore, the identification procedure was not suggestive.

{¶ 13} Even if the procedure were suggestive, the identification is reliable under the totality of the circumstances. D.C. had ample opportunity to view the suspect as the men were holding him and the other victims at gunpoint for more than 20 minutes. D.C. recognized appellant's voice and was able to accurately describe the weapon used during the robbery. Both men only had the bottom half of their faces covered by masks and therefore the victims were able to see the top half of the faces in order to identify them. Only two days passed between the crime and D.C.'s identification of appellant. D.C. also indicated that he was very positive when he identified appellant.

{¶ 14} D.C.'s identification of appellant is bolstered by his previous knowledge of appellant. D.C. and appellant had attended a Fourth of July party together and D.C. used this information in his identification of appellant. The mere fact that appellant identified

6.

appellant before a photo lineup was presented to him does not make his identification unreliable, but rather strengthens its reliability.

{¶ 15} We find appellant's sole assignment of error not well-taken. Judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this action pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.          _____
                                            JUDGE

Christine E. Mayle, P.J.     

Gene A. Zmuda, J.         _____
CONCUR.                                               JUDGE

_____
                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.